IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 24-CR-640-MLG |
| | ) | |
| vs. | ) | |
| | ) | |
| **HERBERT BEN, JR.**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' MOTION *IN LIMINE* TO ADMIT TESTIMONY BY R.B. REGARDING DOMESTIC VIOLENCE

The United States respectfully requests this Court admit trial testimony from R.B. regarding non-specific instances of domestic violence perpetrated upon her by Defendant, which have a relevant, non-propensity purpose. These prior acts of domestic violence indirectly rebut Defendant's assertion that R.B. coached Jane Does 1 and 2 to lie to police about sexual abuse (the very basis for this case) and further demonstrates R.B.'s mental state by explaining why R.B. remained married to Defendant and did not disclose to police Ti.L.'s prior accusation of sexual abuse perpetrated by Defendant, which R.B. learned of approximately two years before Jane Does 1 and 2 disclosed Defendant's abuse.

### FACTS

1. R.B. met Defendant in 2016. (11/9/22 interview of R.B., Ex. 1, BN 844). Shortly thereafter, Defendant moved in with her and her two young daughters, Jane Does 1 and 2. (*Id*.). R.B. and Defendant married in 2017. (*Id*.).

2. Interviewed by the FBI on November 9, 2022, as part of this case, R.B. said Defendant was violent towards her. (*Id*. at BN 845). She feared him. (*Id*.). He told her that he knew martial

1

arts. (*Id*.). He threatened suicide after he battered her, and he said he would rather die than go to prison. (*Id*.).

3. The United States will call R.B. as a witness at trial.

**First reported instance of domestic violence**

4. On June 22, 2017, Defendant strangled R.B., which resulted in Jicarilla Apache Police (JAPD) being dispatched to their Dulce home. (Report of JAPD Agent A. Julian, Ex. 2, BN 909).[1] R.B. told responding officers that Defendant grabbed her throat and pushed his fingers into her mouth and down her throat such that she could not breathe. (*Id*. at BN 910). The responding officer noted bruising, dried blood, and scratches to R.B.'s neck. (*Id*. at BNs 910-11). R.B. agreed to prosecute Defendant that night; however, when a JAPD officer re-contacted R.B. five days later, R.B. said Defendant apologized and she thus did not wish to pursue criminal charges. (*Id*. at BN 911).

**Second reported instance of domestic violence**

5. On September 21, 2017, JAPD was again called to an incident of domestic violence. (Report of JAPD Officer J. Cayaditto, Ex. 3, p. 2). In this instance, Defendant held a sharp object to R.B.'s neck after a verbal argument. (*Id*. at p. 3). Defendant also threatened R.B., telling her if she did not comply with his demands, he would kill everyone in their home. (*Id*.). When another occupant of the home distracted Defendant, R.B. fled the home. (*Id*.).

**Third reported incident of domestic violence**

6. On March 30, 2018, JAPD was again summoned to assist in an incident of domestic violence. (Report of JAPD Officer J. Aranda, Ex. 4, p. 2). In this incident, Defendant argued with R.B., who decided to leave their home with Jane Does 1 and 2. As R.B. tried to leave

---

[1] In these earlier police reports, R.B. is referred to as R.W.

2

in a car, Defendant dragged R.B. out of the car by her hair. (*Id*. at p. 3). Defendant then got into the driver's seat with Jane Does 1 and 2 still in the car, drove recklessly, and struck another car. (*Id*.).

7. When JAPD officers arrived, Defendant was holed up at home with Jane Does 1 and 2; he refused to answer the door for police. (*Id*. at p. 4). When police eventually located house keys to enter the home, Defendant was in bed with Jane Does 1 and 2, feigning surprise, acting as if they were all sleeping. (*Id*.). Defendant denied doing anything unlawful to R.B., even commenting that this was not the first time R.B. had falsely accused him of hitting her. (*Id*. at p. 5). After being arrested, JAPD officers found Defendant possessed R.B.'s ID cards, social-security card, and debit cards. (*Id*. at p. 6).

**R.B.'s daughter Ti.L. discloses sexual abuse by Defendant**

8. Besides Jane Does 1 and 2, Defendant also molested R.B.'s older daughter, Ti.L., by touching her vagina in a Farmington hotel room. (9/16/22 interview of Ti.L., Ex. 5, BN 822). A couple of years after that touching occurred (in about 2020), Ti.L. disclosed Defendant's conduct to her older sister, who then told R.B. about it. (*Id*. at BN 823). Ti.L. and R.B. then spoke about this incident; R.B. told Ti.L. she was sorry it happened. (*Id*.).

9. R.B. recalled confronting Defendant with Ti.L.'s disclosure when R.B. learned of it. (Ex. 1 at BN 845). Defendant denied touching Ti.L., but R.B. was nevertheless still uneasy about leaving Jane Does 1 and 2 alone with Defendant. (*Id*.). R.B. stayed married to Defendant.

**Defendant denies molesting Jane Doe 1, Jane Doe 2, and Ti.L.**

10. The FBI interviewed Defendant on November 9, 2022. (11/9/22 interview of Defendant, Ex. 6, BN 839). He denied inappropriately touching any of R.B.'s daughters. (*Id*. at BN 840-41). Defendant said that on the night of Jane Doe 1 and 2's 2022 disclosures, R.B.

3

called him and said she was going to tell Jane Does 1 and 2 to lie to police about him. (*Id*. at BN 840). He also admitted he and R.B. had a history of domestic violence. (*Id*.).

## LAW & ARGUMENT

### Rule 404(b)

"Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Veneno*, 107 F.4th 1103, 1116 (10th Cir. 2024) (emphasis in original) (quotation omitted). The Tenth Circuit interprets Rule 404(b) inclusively, holding that in general, relevant evidence of other crimes or acts should be admitted "except that which tends to prove only criminal disposition," *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001). Still, even under this "inclusive" approach, "[t]he government bears the burden of showing that the proffered evidence is relevant to an issue other than character," *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000) (citation omitted), and must "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred." *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985).

To determine whether admission of Rule 404(b) evidence is proper, courts conduct a four-part test:

1. Evidence must be offered for a proper purpose;
2. Evidence must be relevant;
3. Evidence's probative value must not be substantially outweighed by its potential for unfair prejudice; and
4. The court, upon request, should instruct jurors to consider the evidence only for the purpose for which it was admitted.

*United States v. Mendoza*, 236 Fed. Appx. 371, 390 (10th Cir. 2007).

4

1. **<u>Factor #1—Evidence must be offered for a proper purpose</u>.**

    The United States has no interest in portraying Defendant as a bad guy who abused R.B. and, by extension, thus probably also molested Jane Does 1 and 2. Rather, the United States seeks to elicit non-specific testimony from R.B. that she feared Defendant because of prior instances of physical abuse. These prior experiences demonstrate that R.B. had a plausible reason not to leave Defendant, not to report his 2020 molestation of Ti.L., and not to threaten Defendant with falsely reporting he molested Jane Does 1 and 2. In other words, the real-life and well-founded fear R.B. experienced rebuts Defendant's denials that he molested Ti.L., Jane Doe 1, and Jane Doe 2 because it explains why R.B. feared exposing Defendant's unlawful conduct by breaking up with him and reporting him to police. *See United States v. Charles*, 691 Fed. Appx. 367, 371 (9th Cir. 2017) (admitting under Rule 404(b) a prior act of domestic violence to contextualize a romantic relationship and explain why a battered party was too afraid to report criminal conduct); *United States v. Bressler*, ACM 38660, 2016 WL 7610560, at *9 (A.F. Ct. Crim. App. Dec. 16, 2016) (unpublished) (collecting cases under Rule 404(b) supporting the proposition that uncharged abuse can be relevant to demonstrate why an abused party did not promptly or completely report abuse).

2. **<u>Factor #2—Evidence must be relevant</u>.**

    The relevance of R.B.'s perception of Defendant's abuse is multifaceted. First, Defendant's prior acts of domestic violence will allow jurors to better understand the nature of Defendant's relationship with R.B., the mother of Jane Doe 1 and 2 and the person who Defendant has accused of concocting and perpetuating this entire criminal case. Second, this evidence rebuts any possible argument that Ti.L. fabricated abuse or that R.B. did not believe Ti.L.'s disclosure by providing a reasonable explanation that R.B. feared leaving or reporting Defendant's conduct. Similarly, this evidence indirectly rebuts Defendant's contention (which Defendant's counsel reiterated at length

5

at the motion hearing on Document 33 on February 5, 2026), that R.B. coached her daughters to lie about Defendant molesting them—after all, a person living in abject fear of their spouse logically has little desire to put forth specious allegations of sexual abuse, particularly when R.B. had been aware of Ti.L.'s similar allegations for roughly two years. Third, the prior acts of abuse are relevant to properly assess R.B.'s credibility. After all, at trial R.B. will be accused of masterminding the false allegations offered by Jane Does 1 and 2.

### 3. Factor #3—Evidence's probative value must not be substantially outweighed by its potential for unfair prejudice.

"In the context of Rule 403, *unfair prejudice* means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Morrow*, 79 F.4th 1169, 1178 (10th Cir. 2023) (emphasis in original) (citing Advisory Committee's notes). "Excluding relevant evidence under Rule 403 'is an extraordinary remedy' and we should use it 'sparingly.'" *Veneno*, 107 F.4th at 1117-18 (quoting *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985)) (refusing to exclude Rule 404(b) evidence on Rule 403 grounds). *See also United States v. Tennison*, 13 F.4th 1049, 1058 (10th Cir. 2021) (refusing to adopt a defendant's recommendation that, in the Rule-403 context, "prejudicial evidence should not be admitted and, more particularly, unduly and unfair prejudicial evidence should never be admitted").

The prejudice here is minimal. The United States will not elicit from R.B. that Defendant strangled R.B. or held a box-cutter to her neck. Rather, the United States will ask R.B. whether she feared Defendant (*she does*) and whether this fear is because of prior incidents of domestic violence (*it is*). This evidence will already be before jurors, who will hear Defendant's recorded admission that domestic violence was present in his relationship with R.B. (*See* Ex. 6 at BN 840). And the chance that jurors will develop an unfair emotional reaction against Defendant, who is

already on trial for molesting two young girls, because he also physically abused his adult wife seems low. *See United States v. Henthorn*, 864 F.3d 1241, 1256 (10th Cir. 2017) (quotation omitted) (noting that "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged.") (emphasis in original).

    4. **Factor #4—The United States has no objection to a limiting instruction.**

The United States has no objection to this Court instructing the jury "that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *United States v. Little*, No. 23-5077, 2024 WL 4469751, at *12 (10th Cir. Oct. 11, 2024) (unpublished).

### REQUEST FOR RELIEF

The United States respectfully requests this Court admit trial testimony from R.B. regarding non-specific instances of domestic violence perpetrated upon her by Defendant. These prior acts of domestic violence indirectly rebut Defendant's assertion that R.B. coached Jane Does 1 and 2 to lie to police about sexual abuse (the very basis for this case) and further demonstrates R.B.'s mental state by explaining why R.B. remained married to Defendant and did not disclose to police Ti.L.'s prior accusation of sexual abuse perpetrated by Defendant, which R.B. learned of approximately two years before Jane Does 1 and 2 disclosed Defendant's abuse.

*// SIGNATURE BLOCK ON FOLLOWING PAGE //*

Respectfully submitted,

**TODD BLANCHE**
Deputy Attorney General

**RYAN ELLISON**
First Assistant United States Attorney



Zach Jones
Amy Mondragon
Assistant United States Attorneys
201 3rd Street NW, Ste. 900
Albuquerque, New Mexico 87102

I HEREBY CERTIFY that on February 7, 2026, I filed the foregoing electronically through the CM/ECF system and then sent a copy of this sealed pleading to Defendant's attorneys via secured email.

Zach Jones
Assistant U.S. Attorney